UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                      :

WALMART STORES, INC.,                          :

                                                      :

                          Interpleader-Plaintiff,       :

                     -v-                            :         11 Civ. 7185 (PAE)

                                                       :

FIRST AMERICAN CORP.,                      :        <u>OPINION & ORDER</u>

                                                       :

                              -and-                      :

                                                     :

FAUNUS GROUP INTERNATIONAL, INC., d/b/a FGI  :
FINANCE,                                         :

                                                     :

                          Interpleader-Defendants.   :

                                                     :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Interpleader-plaintiff Walmart Stores, Inc. ("Walmart") brings this interpleader action

against defendants First American Corp. ("First American") and Faunus Group International,

Inc. ("FGI") for a determination of ownership of an outstanding account payable in the amount

of $334,372.58 (the "Funds"), to which both First American and FGI assert an ownership

interest.  First American and FGI cross-move for summary judgment under Federal Rule of Civil

Procedure 56.  For the reasons that follow, summary judgment is entered in FGI's favor.

**I.      Background**[1]

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' pleadings
and their submissions in support of and in opposition to the instant motions—specifically, FGI's
Memorandum of Law in Support of its Motion for Summary Judgment ("FGI Mem.") (Dkt. 49);
the Affidavit of Sami Altaher in Support of FGI's Motion for Summary Judgment ("Altaher
Aff.") (Dkt. 50); First American's Affirmation in Support of its Motion for Summary Judgment
("FA Mem.") (Dkt. 53); and the Affirmation of Richard Weber in Support of First American's
Motion for Summary Judgment ("Weber Aff.") (Dkt. 53-1).  Neither interpleader-defendant
submitted a Statement of Material Facts in accordance with Federal Rule of Civil Procedure

The Funds subject to the interpleader action are $334,372.58 owed by Walmart to its vendors, Magla Products, LLC and Magla International, LLC (collectively, "Magla"), for inventory received by Walmart.  The Funds are subject to multiple adverse claims asserted by First American and FGI.  The facts detailed herein are undisputed.

### A.  First American's Claim

First American is a non-U.S. corporation with its principal place of business in Florida. Magla is a New Jersey corporation.  FA Mem. ¶ 3.  In the relevant period, First American contracted with Magla to manufacture gloves for purchase.  *Id.*  In late 2010, Magla was in arrears, owing money to First American on various outstanding purchase orders.  As of March 7, 2011, Magla owed First American $661,449.60.  *Id.*

In January 2011, because of the outstanding balance owed by Magla, First American blocked the release of the merchandise which formed the basis of two outstanding purchase orders.  *Id.* ¶¶ 4, 10; Affidavit of Mort Finkelstein (Weber Aff. Ex. 1) ¶ 2.  On March 10, 2011, in exchange for First American's agreement to release the merchandise, Magla sent $255,487.68, by check, to First American.  Finkelstein Aff. ¶ 2.  The check soon was rejected by Magla's bank on account of insufficient funds.  FA Mem. ¶ 5.  In a letter dated April 4, 2011, First American demanded payment of the $255,487.68, but Magla did not make that payment.  *Id.* ¶ 20.

On March 21, 2011, First American sued Magla for breach of contract in Florida state court.  FA Mem. ¶ 6; FGI Mem. ¶ 11.  On June 30, 2011, First American obtained a judgment

---

56.1, but rather set out the undisputed facts in their memoranda of law in support of the motions. *See* FGI Mem. ¶¶ 1–14; FA Mem. ¶¶ 8–20.  Where facts stated in a party's submissions are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

against Magla from that court.  FA Mem. ¶ 6; FGI Mem. ¶ 11.  Judgment was entered against

Magla for $1,429,912.64, which included $661,449.60 in unpaid invoices from 2010, the

$255,487.68 that remained unpaid after Magla's March 2011 check was rejected by the bank,

and $766,463.04 in treble damages under Florida law for the bounced check.  FA Mem. ¶ 6.

In July 2011, First American sought a writ of garnishment against Walmart in connection

with the judgment against Magla obtained from the Florida court.  FA Mem. ¶ 7; FGI Mem. ¶

12.  On July 14, 2011, the Hon. Meenu Sasser issued the writ of garnishment against Walmart

for all property belonging to Magla in Walmart's possession.  Dkt. 25-1.

**B.  FGI's Claim**

FGI is a Delaware corporation with its principal place of business in New York.

On January 25, 2011, FGI and Magla entered into a Sale of Accounts and Security

Agreement (the "Agreement").  FGI Mem. ¶ 4; Altaher Aff. Ex. 1.  The Agreement provides:

"[Magla] hereby offers to sell, assign, transfer, convey and deliver to [FGI], as absolute owner,

in accordance with the procedure detailed herein, all of [Magla's] right, title and interest in and

to [Magla's] Accounts . . . ."  Altaher Aff. Ex. 1 at 5.  It further provides that "[i]t is the intention

of the Parties hereto that as to all purchased Accounts, the transactions contemplated hereby shall

constitute a true purchase and sale of Account(s) under § 9-318 of the UCC and as such, [Magla]

shall have no legal or equitable interest in the Accounts sold."  *Id.* at 8.

Also on January 25, 2011, in accordance with the Agreement, Magla granted FGI a

security interest in and a lien upon all of Magla's right, title and interest in all of its assets.  The

Agreement provided:  "In order to secure the payment of all indebtedness and obligations of

[Magla] to [FGI] (including the Obligations), in addition to the sale of Purchased Accounts,

[Magla] hereby grants to [FGI] a security interest in and Lien upon all of [Magla's] right, title

[3]

and interest in and to all of Seller's Collateral."  Agreement at 13.  The Agreement defined

"Collateral" as "all of [Magla's] right, title and interest in and to all of the following, wherever

located and whether now or hereafter existing or now owned or hereafter acquired or arising: (a)

all Accounts . . . and (n) all cash and non-cash proceeds of the foregoing, including insurance

proceeds."  *Id.* at 1.  The Agreement provided that the terms "Account(s)" and "Account Debtor"

were to have the definition contained in the UCC.  *See id.*; FGI Mem. ¶ 10.

On January 26, 2011, FGI filed a UCC-1 financing statement against Magla with the

Secretary of State of New Jersey ("Financing Statement").  *See* FGI Mem. ¶ 8; Altaher Aff. Ex.

2.  The Financing Statement provided:  "This Financing Statement covers the following

collateral: All of the Seller's/Debtor's [Magla's] present and future right, title and interest in and

to each of the following, wherever located and whether now or hereafter existing or now owned

or hereafter acquired or arising: (a) Accounts . . . ."  Altaher Aff. Ex. 2 at 1.

In February 2011, FGI provided a written Notice to Account Debtors to all known parties

with present or future accounts payable owing to Magla, including Walmart.  FGI Mem. ¶ 9.  On

or about February 3, 2011, Walmart confirmed receipt of the Notice by email message to FGI.

*See id.*; Altaher Aff. Ex. 4.

## II.    Procedural History

On October 13, 2011, Walmart filed its Complaint Interpleader against FGI and First

American, and deposited the Funds with the Southern District of New York.  FA Mem. ¶ 7.  On

October 25, 2011, FGI answered; on December 15, 2011, First American moved to dismiss.  On

December 29 and 30, 2011, FGI and Walmart, respectively, filed oppositions to First American's

motion to dismiss; on January 9, 2012, First American replied.  On January 26, 2012, after oral

argument on the motion, the Court denied First American's motion to dismiss in an opinion read

from the bench; a summary order was issued on the same date (Dkt. 33).

On February 2, 2012, the parties entered into a joint stipulation dismissing Walmart from

the case and awarding it attorney's fees deducted from the interpleader funds (Dkt. 34).

On May 15, 2012, after fact discovery, FGI moved for summary judgment; on May 16,

2012, First American cross-moved for summary judgment; on May 31, 2012, each party

responded to its adversary's motion.

## III.    Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a

question of material fact.  In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  To survive a motion

for summary judgment, the opposing party must establish a genuine issue of fact by "citing to

particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*,

554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to

the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593

F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over "facts that might affect the

outcome of the suit under the governing law" will preclude a grant of summary judgment.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

In determining whether there are genuine issues of material fact, "we are required to

resolve all ambiguities and draw all permissible factual inferences in favor of the party against

whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)

(citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  The same standard applies where,

as here, the parties cross-move for summary judgment.  "[E]ven when both parties move for

summary judgment, asserting the absence of any genuine issues of material fact, a court need not

enter judgment for either party.  Rather, each party's motion must be examined on its own

merits, and in each case all reasonable inferences must be drawn against the party whose motion

is under consideration." *Morales v. Quintel Entmt., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)

(citation omitted).

## IV.    Discussion

FGI moves for summary judgment on the grounds that: (1) FGI acquired an absolute

ownership interest in all of Magla's accounts receivable before First American's judgment

against Magla; and (2) FGI holds a first priority perfected lien on and security interest in all

property that belonged to Magla, including all accounts owed to Magla.  First American cross-

moves for summary judgment on the grounds that it is a holder in due course of a negotiable

instrument, which it argues has priority over FGI's interest.  For the reasons that follow, the

Court finds that FGI's interest has priority, and enters summary judgment in its favor.

### A.    FGI's Interest in Magla's Accounts

Under New York law, the rights of an account assignee "are subject to: (1) all terms of

the agreement between the account debtor and assignor and any defense or claim in recoupment

arising from the transaction that gave rise to the contract; and (2) any other defense or claim of

the account debtor against the assignor which accrues before the account debtor receives a

notification of the assignment authenticated by the assignor or the assignee."  N.Y. U.C.C. Law §

[6]

9-404(a).[2]  Additionally, subject to certain exceptions not applicable here, "the claim of an account debtor against an assignor may be asserted against an assignee . . . only to reduce the amount the account debtor owes."  N.Y. U.C.C. Law § 9-404(b).  In other words, "an assignee generally takes an assignment subject to defenses and claims of an account debtor," but § 9-404 "generally does not afford the account debtor the right to an affirmative recovery from an assignee."  N.Y. U.C.C. Law § 9-404 cmts. 2, 3.

The Agreement between FGI and Magla became effective on January 25, 2011.  It provides that Magla "offers to sell, assign, transfer, convey and deliver to [FGI], as absolute owner . . . all of [Magla's] right, title and interest in *all Accounts*," and that the transaction was intended to "constitute a true purchase and sale of Account(s) under § 9-318 of the UCC and as such, [Magla] shall have no legal or equitable interest in the Accounts sold."  Altaher Aff. Ex. 1 at 5, 8 (emphasis added).  The Agreements characterized such Accounts as "now or hereafter existing or now owned or hereafter acquired or arising."  *Id.* at 1.  Under the UCC, an "Account" is defined as, *inter alia*, "a right to payment of a monetary obligation . . . (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered."  N.Y. U.C.C. Law § 9-102(a)(2).

First American argues that its interest in the account payable to Magla is senior to FGI's interest in the account under the Agreement because First American is a holder in due course of a negotiable instrument: the dishonored check drawn on Magla's bank.  Under New York law, subject to various exceptions not relevant here, a holder of a negotiable instrument is a holder in

---

[2] The pertinent portion of N.Y. U.C.C. Law § 9-404 was formerly codified at § 9-318 and was recodified in 2001.  *See* Disposition Table, Vol. 62 1/2 McKinney's Consolidated Laws of New York, U.C.C. §§ 7-101 to 9-400, at 301–02 (McKinney 2002); *Riviera Fin. of Tex., Inc. v. Capgemini U.S., LLC*, No. 10-cv-5489, 2012 WL 1132209, at *3 (S.D.N.Y. Mar. 30, 2012).

due course if "he takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt."  N.Y. U.C.C. Law § 3-305.

However, whether First American was a holder in due course of the check is not decisive here.  First American cites several cases discussing the "special protections" of a holder in due course: *Wilson v. Toussie*, 260 F. Supp. 2d 530, 542 (E.D.N.Y. 2003); *Provident Bank v. Cmty. Home Mortg. Corp.*, 498 F. Supp. 2d 558 (E.D.N.Y. 2007); *In re AppOnline.com, Inc.*, 285 B.R. 805, 818–19 (Bankr. E.D.N.Y. 2002).  But these cases track the UCC, which squarely provides that rights afforded to such a holder of an instrument under § 3-305 are limited to the instrument itself.  In other words, even assuming *arguendo* that First American is a holder in due course of an instrument drawn on Magla's bank, the UCC does not confer, and First American cites no law conferring, such a holder senior interests in separate property, such as accounts payable in which the holder does not have an independent interest.  First American's interest under § 3-305 as to the instrument itself—the check drawn on Magla's bank—is thus irrelevant to the underlying issue here.  That issue turns on the priority of interests in the Funds, which in turn is based on the priority of interests in the Walmart account payable to Magla, not on First American's interest in the bounced check.

First American's claimed interest in the account payable to Magla arises from the July 14, 2011 writ of garnishment as against Walmart for all property belonging to Magla in Walmart's possession.  Dkt. 25-1.  The writ provided that Walmart, as garnishee, must represent whether it

> is indebted to [Magla] at the time of the answer [20 days after July 14, 2011] or was indebted at the time of service of the writ, or at any time between such times, and in what sum and what tangible and intangible personal property of [Magla] the garnishee [Walmart] is in possession or control of at the time of the answer [20

days after July 14, 2011] or had at the time of service of this writ, or at any time between such times . . . .

Dkt. 25-1.

The July 14, 2011 writ of garnishment does not, however, afford First American relief as to the Walmart account. It attached to all "personal property of [Magla]" that Walmart was "in possession or control of" starting on the date of the writ: July 14, 2011. *Id.* But it is undisputed that as of July 14, 2011, Magla and FGI had already entered into the Agreement, under which FGI was the "absolute owner . . . all of [Magla's] right, title and interest in all Accounts," and left Magla with "no legal or equitable interest in the Accounts sold." Altaher Aff. Ex. 1 at 5, 8. Accordingly, the Funds in the Walmart account payable to Magla were not Magla's "personal property," because, by then, under the Agreement, FGI, not Magla, was the "absolute owner" of any of Magla's interest in those accounts.

Because, as a matter of law, First American's writ of garnishment as against all property of Magla in Walmart's possession cannot be executed against property in which Magla has "no legal or equitable interest," *id.* at 8, and because, as of July 14, 2011, FGI was the absolute owner of the Funds in the accounts payable to Magla, the writ of garnishment does not afford First America a basis for relief. Accordingly, summary judgment must be entered in FGI's favor.

**B.      FGI's Security Interest**

Independently, FGI has established its priority of interest in the Funds by virtue of having a perfected security interest. Under New York law, "a security interest is perfected if it has attached and all the applicable requirements for perfection . . . have been satisfied." N.Y. U.C.C. Law § 9-308. Under the UCC, "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection . . . and the priority of a security interest in collateral." *Id.* § 9-301. The parties agree that, because Magla is organized under the laws of New Jersey, New

[9]

Jersey law governs perfection of an interest in its collateral.[3]  *See id.* § 9-307(e) ("A registered organization that is organized under the law of a state is located in that state.").  Under New Jersey law, except for certain exceptions not relevant here, "a financing statement must be filed to perfect all security interests."  N.J. STAT. ANN. § 12A:9-310 (West 2012).  The financing statement must provide the name of the debtor, the name of the secured party and indicate the collateral covered by the financing statement.  *See id.* § 12A:9-504.

Here, on January 26, 2011, pursuant to the Agreement, FGI filed the Financing Statement against Magla's assets with the Secretary of State of New Jersey.  *See* FGI Mem. ¶ 8; Altaher Aff. Ex. 2.  The Financing Statement provided:

> This Financing Statement covers the following collateral: All of the Seller's/Debtor's [Magla's] present and future right, title and interest in and to each of the following, wherever located and whether now or hereafter existing or now owned or hereafter acquired or arising: (a) Accounts . . . . SELLER/DEBTOR [Magla] HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN.

Altaher Aff. Ex. 2 at 1.  FGI thereby obtained a perfected security interest in those assets on January 26, 2011—the date it filed the Financing Statement as executed, which gave FGI absolute rights to Magla's current and future accounts.

Because the Financing Statement gave FGI a perfected security interest in Magla's property under New Jersey law, the remaining issue is whether that security interest is enforceable against the Walmart account payable to Magla.  A security interest becomes "enforceable against the debtor and third parties with respect to [] collateral only if: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the

---

[3] Because New York law on this point mirrors New Jersey's, the choice of law does not affect the substantive analysis here.  *See* N.Y. U.C.C. Law § 9-310(a) ("a financing statement must be filed to perfect all security interests").

collateral to a secured party; and (3) . . . the debtor has authenticated a security agreement that

provides a description of the collateral." N.Y. U.C.C. Law § 9-203. "Once these three events

have occurred, the security interest is enforceable and the interest is said to have 'attached.'"

*Cont'l Coffee Prod. Co. v. Banque Lavoro S.A.*, 852 F. Supp. 1235, 1237 (S.D.N.Y. 1994); *see*

*also Lashua v. LaDuke*, 272 A.D.2d 750 (3d Dep't 2000).

Each element of § 9-203 is satisfied here. First, FGI gave "value" when it purchased "as

absolute owner . . . all of [Magla's] right, title and interest in all Accounts." Altaher Aff. Ex. 1 at

5. Second, Magla, as debtor, had "rights in the collateral," in that the account in Walmart's

possession was payable to Magla. Finally, Magla, as debtor, authenticated a security agreement

as to the collateral when it entered into the Agreement with FGI, which agreement gave FGI an

interest in "all Accounts" that were "now or hereafter existing or now owned or hereafter

acquired or arising." *Id.* at 1. Accordingly, by executing the Agreement and properly filing the

Financing Statements, FGI created, attached, and perfected its security interest in the Walmart

account payable to Magla, effective January 26, 2011.

This ruling does not leave First American without a remedy against Magla. Under the

June 30, 2011 Florida court judgment against Magla, First American's interest is that of a

judgment creditor. As such, Magla is entitled to all remedies and recourse afforded to judgment

creditors under New York law. *See* FA Mem. ¶ 6.

Under the facts here, however, those remedies do not give First American recourse to the

Funds, because FGI has a superior, and perfected, interest in those funds. To be sure, Walmart's

account payable to Magla was, at one point, a debt owing to Magla. Under New York law, a

levy upon any debt owed to a judgment debtor may be effected by service of a copy of an

execution upon a garnishee. *See* N.Y. C.P.L.R. § 5232(a); David D. Siegel, *New York Practice* §

489, 491 (4th ed. 2005) ("Enforcement of a judgment on a debt must be effected through the garnishee."). The "garnishee" is any individual "who owes a debt to a judgment debtor, or a person other than the judgment debtor who has property in his possession or custody in which a judgment debtor has an interest." *Solera Const., Inc. v. J.A. Jones Const. Grp.*, No. cv-2003-1383, 2010 WL 1269938, at *3 (E.D.N.Y. Apr. 2, 2010) (citing N.Y. C.P.L.R. § 105(I)). A judgment creditor can perfect a lien on a garnishee for "any debt owed to the judgment debtor or obligor, by serving a copy of the execution upon the garnishee, . . . effective only if, at the time of service, the person served owes a debt to the judgment debtor or obligor." N.Y. C.P.L.R. § 5232. And First American attempted to effect just such an interest when it sought and obtained the writ of garnishment as against Walmart for all property belonging to Magla in Walmart's possession.

However, fatal to First American's bid here, FGI's January 26, 2011 Financing Statement, and thus its perfected security interest in the Walmart account, *pre-dated* First American's July 14, 2011 writ of garnishment. Accordingly, FGI's perfected security interest takes priority over First American's unperfected judgment. *See* N.Y. U.C.C. Law § 9-322(a)(2); *Solera Const., Inc.*, 2010 WL 1269938, at *3; *Resner v. Greely*, 212 A.D.2d 619, 619 (2d Dep't 1995) (holding that secured creditor's rights were superior to judgment creditor where UCC-1 filing predated perfection of judgment lien); *Travelers Cas. & Sur. Co. of Am. v. Target Mech. Sys.*, 800 N.Y.S.2d 358 (Sup. Ct. Kings Cnty. 2004) ("Where secured creditor's UCC-1 filing predated perfection by judgment creditors of their judgment liens, rights of secured creditor come first.").

"In general, judgments cannot be satisfied with assets of third parties against whom the judgment does not run." *MRW Int'l, Inc. v. Inversora Murten S.A.*, No. 11-cv-2444, 2012 WL

[12]

12886 (S.D.N.Y. Jan. 3, 2012) (citing *Grupo Mexicano v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321 (1999)). Because it is undisputed that First American did not assert a claim as to the Funds in the Walmart account before January 26, 2011, summary judgment must be entered in FGI's favor on the independent grounds that it effected a perfected security interest in the Funds prior to First American's writ of garnishment.

## CONCLUSION

For the reasons stated herein, FGI's motion for summary judgment is GRANTED, and First American's cross-motion for summary judgment is DENIED. The Clerk of Court is directed to enter judgment in FGI's favor, terminate the motions at docket numbers 48 and 52, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 31, 2012
       New York, New York

[13]